ONTIVEROS Cmplt Ex. B 001

# LEASE TO PURCHASE



PLAINTIFF'S
EXHIBIT
B

**Entered into this** 01st **day of** September **, 2023 at Bensenville, Illinois between:**

**LESSOR:**

**Lessor Name: Floyd Inc**

**Lessor Address: 729 N. IL 83 Route Suite 324**

**City/State/Zip: Bensenville, IL 60106**

**AND**

**LESSEE:**

Jayme Richard Ontiveros
**Lessee Name :**_____

3810 49th Ave
**Address:** _____

Moline, IL 61265
**City/State/:** _____

**EQUIPMENT:**

**Year:** 2023_____

**Make:** Kenworth_____

**Model:**

**VIN#** 1XKYDP9X4PJ238684____

**PRICE:**

**Lease Price: $** 182,000.00_____

**Down Payment:$** 0_____ **(if applicable)**

**Payments: $** 700_____

**Total # of Payments:** 260_____

**Warranty Included (Factory):** Yes_____

**\*\*\*\* PLEASE NOTE, IF ANY REQUIRED DOWN PAYMENT IS NOT MADE  AFTER THE LEASE TO PURCHASE AGREEMENT IS  EXECUTED, THE LEASE TO PURCHASE WILL BE AMENDED TO DECLARE ZERO DOWN PAYMENT, AND NO DOWN PAYMENT WILL BE ACCEPTED BY LESSOR\*\*\*\*\***

**\*\*\*\* AS A CONDITION PRECEDENT TO THIS LEASE TO PURCHASE, PURCHASER MUST AGREE TO LEASE THE PURCHASED EQUIPMENT TO LESSOR'S MOTOR CARRIER FOR A MINIMUM OF ONE YEAR BEFORE ANY BUY-OUT OF THE LEASE TO PURCHASE CAN BE INITIATED \*\*\*\*\***

ONTIVEROS Cmplt Ex. B 001

Doc ID: 840676a78780714b4bb0fd3e69308d6cd16389ef

**\*\*\*\*\*TITLE TRANSFER TO TAKE PLACE NO LATER THAN 45 DAYS FROM FINAL PAYOUT OF ALL SUMS DUE UNDER THE LEASE TO PURCHASE AND THE ATTACHED EQUIPMENT LEASE AGREEMENT. LESSOR MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AS TO LEASED EQUIPMENT.\*\*\*\*\***

*DISCLAIMER: NO TITLE TRANSFER SHALL OCCUR UNTIL THE LESSEE SATISFIES ALL OBLIGATIONS AND OUTSTANDING BALANCES OWED TO LESSOR, SUCH AS BUT NOT LIMITED TO, MAINTENANCE REPAIRS, TOLL VIOLATIONS, ETC.*

**LESSOR / LESSOR SIGNATURE**

**LESSEE / LESSEE SIGNATURE**

**VLADIMIR ILIC**

Jayme Richard Ontiveros

**LESSOR / LESSOR PRINTED NAME**

**LESSEE / LESSEE PRINTED NAME**

**IN THE STATE OF ILLINOIS:**

**COUNTY OF DU PAGE:**

The above-referenced parties, personally present before me, did set their hands and seals to the foregoing document this _____ day of _____ at Bensenville, Illinois.

_____(SEAL)

**Notary Public, State of Illinois**

**My Keaton Commission Expires:\_\_/_____/\_\_\_\_**

ONTIVEROS Cmplt Ex. B 002

Doc ID: 840676a78780714b4bb0fd3e69308d6cd16389ef

ONTIVEROS Cmplt Ex. B 003

# EQUIPMENT LEASE TO PURCHASE AGREEMENT

This **EQUIPMENT LEASE AGREEMENT** is hereby entered on this __01st__day of
__September__ ,2023 between __Jayme Richard Ontiveros__ SS#/**FEIN** ▆▆▆▆▆

("Lessee") and FLOYD INC, a CORPORATION organized under the laws of the State

of Illinois ("Lessor"). Lessor and Lessee shall collectively be known here in as "the Parties".

**WITNESSETH:**

**WHEREAS,** Lessor leases to the Lessee and the Lessee leases from the Lessor, the exclusive use of the Equipment described below for the Term of this Lease.
**WHEREFORE**, for good consideration and mutual promises, the Parties, intending to be legally bound hereby, agree and contract as follows:

**Leased Equipment:**

Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the following described equipment (the "Leased Equipment"):
Year: __2023__ Make: __Kenworth__ VIN# __1XKYDP9X4PJ238684__

**Lease Terms:**

This lease agreement shall be for a term of _____ months or __260__ weeks, commencing on __09__ / __01__ /2023. Lessee's obligation to pay the Lease Payments and other Lease obligations is absolute and unconditional and is not subject to cancellation (except as provided below), reduction, setoff or counterclaim. This Lease shall continue until all Monthly Payments have been made whether or not Lessee retains possession of the Equipment.

**Purchase Option: $1.00** at the end of the Lease Term provided that Lessee is not in default.

**Lease Payments:**

Lease payments shall be $__700__ per __month or ✔week. The initial down payment due upon execution is $__0__ (if applicable). Under this lease agreement a total of _____ monthly or __260__ weekly payments in the amount of $__700__ shall be due to Lessor from Lessee. After the first monthly payment Lessee shall continue making lease payments every _____month or __✔__week with payment due on the same day of each subsequent month or week as the first payment. The initial down payment is non-refundable in case this agreement is terminated for any reason.

**Lessor's Direction for Delivery of Lease Payments:**

Lessee shall pay to Lessor all payments by the way of ACH or Wire Transfer. If, in a week, for any reason whatsoever, including but not limited to, breakdown, disrepair or accident, Lessee shall not work, the payment for that week shall still be due. Lessor may hereafter change this direction to Lessee for delivery of lease payments by serving Lessee with written notice containing new payment instructions.

ONTIVEROS Cmplt Ex. B 003 Doc ID: 840676a78780714b4bb0fd3e69308d6cd16389ef

**Exclusivity:**

During the Lease period and until all payments have been satisfied under this agreement or at Lessee's termination of the agreement, the Lessee is obligated to exclusively haul loads for the Lessor's Motor Carrier. Failure to do so will result in a breach of this agreement.

**Delivery & Acceptance:**

Lessee agrees to accept the Equipment on or after  09  /  01  /2023. Lessee is responsible for the inspection of the Equipment prior to its use. By using the Equipment, Lessee acknowledges that it has inspected the Equipment, that it is in good operating order and fit for Lessee's intended use and that the Equipment operates to the satisfaction of the Lessee.

**Payment Terms for Leased Equipment:**

Lessee agrees to make payments to Lessor for the equipment under the terms of this agreement as stated previously. Should Lessor have to make any repairs to the unit, based on Lessee's failure to do so, those sums will be deducted from Lessee's revenue statements or be deducted from any sums held by the Motor Carrier at termination of the Lease Agreement (by Lessor or Lessee) or at Pay-Off of the Leased Equipment.

**Drivers and Restrictions on Use:**

Lessee and Lessor agree that the Lessor has an interest in protecting its interest in the Equipment by ensuring that the Lessee engages in the safe operation of the Equipment and in ensuring that Lessee performs regular and adequate State and Federally-mandated maintenance of the Equipment. Lessee shall not use the Equipment in violation of any Federal, State, or local statutes, laws, ordinances, rules or regulations, or contrary to the provisions of any applicable insurance policy, including, but not limited to, Department of Transportation Hours of Service Regulations, and Vehicle Inspection and Maintenance Regulations. Any violations of Federal, State or local statutes by Lessee including, but not limited to, Department of Transportation Hours of Service Regulations, and Vehicle Inspection and Maintenance Regulations shall constitute a material breach of this Lease. Lessee's use of the Equipment shall comply with all insurance requirements, all applicable laws and regulations concerning the maintenance and operation of such Equipment in interstate commerce and all applicable manufacturer recommendations concerning the maintenance and operation of the Equipment. Lessee agrees to have all manufacturer service bulletins and recalls performed on the Equipment during the term of the Lease and bear all expenses related thereto. Lessee agrees that Lessee will not materially alter or modify the Equipment during the Lease period without prior written notice to and written approval from the Lessor.

**Removal of Logos and Signs**

Unless otherwise agreed, the Lessee is prohibited from removing, altering, or destroying any logos or signs from any equipment belonging to the Lessor. This includes but is not limited to the Lessor logos placed on trailers or on the side of the trucks. Violation of this clause constitutes a breach of this agreement, and the Lessee will be responsible for the replacement cost of any damaged or altered company logo or sign.

**Repairs and Maintenance:**

ONTIVEROS Cmplt Ex. B 004

Doc ID: 840676a78780714b4bb0fd3e69308d6cd16389ef

Lessee is required, at Lessee's own cost and expense, to keep the Equipment in good repair, condition and working order, except for ordinary wear and tear, and Lessee will supply and bear the expense of all parts and labor required to keep the Equipment in good repair and condition. All replacement parts used or installed and repairs made to the Equipment will become Lessor's property. All replacement parts used or installed and repairs made to the Equipment shall be of the same type and quality as those furnished by Lessor. If the Equipment is covered by a manufacturer warranty at the time of the execution of this agreement, only then will the Lessee not be responsible for the repairs, parts, mechanisms or devices installed on the Equipment that are covered under the warranty. The Lessee is responsible for amounts due above and beyond the warranty coverage. Should Lessor have to make any repairs to the Equipment based on Lessee's failure to do so, those sums will be deducted from Lessee's revenue statements or from any sums held by the Motor Carrier at termination of the Lease Agreement by either party or at the Pay-Off of the Leased Equipment.

LESSEE ACKNOWLEDGES THAT LESSOR IS NOT RESPONSIBLE FOR PROVIDING ANY REQUIRED MAINTENANCE AND/OR REPAIRS FOR THE EQUIPMENT DURING THE TERM OF THE LEASE.

All Truck Leases require that the Lessee change the oil on said unit every 35,000 miles with Rotella T5 10W30 Semi Synthetic oil or Delvac Mobil 10W30. Each oil change shall be done at either TA, Loves, Speedco, Pilot or the dealership, no exceptions. We cannot accept paid receipts/invoices from any shop other than the ones listed. Any Lessee that performs work outside of the approved shops, or that performs the required oil change may be held accountable for any loss or unnecessary wear on the components of the unit, and any cost to repair or replace parts due to bad oil quality or oil changes made at unauthorized shops will be the full and total cost of Lessee and shall be due and payable, on demand, at Lessor's election. Furthermore, repeated oil changes made not using the listed oil, or done at the listed shops, may be cause for termination of the Lease whereby all remedies afforded to and available to Lessor may be executed and/or any sums due and owing to Lessee may be forfeited for failure to adhere to this provision.

**Warranty:**

Lessor is leasing the Equipment to Lessee "AS - IS" and Lessee acknowledges that Lessor is not the manufacturer of the Equipment or an agent of the manufacturer of the Equipment. LESSOR MAKES NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR TITLE. IN NO EVENT SHALL LESSOR HAVE ANY LIABILITY FOR NOR SHALL LESSEE HAVE A CLAIM OR REMEDY AGAINST LESSOR FOR CONSEQUENTIAL, SPECIAL, INCIDENTAL, OR PUNTIVE DAMAGES, OR FOR ANY LOSS OF PROFITS OR SAVINGS, LOSS OF USE OR ANY OTHER COMMERCIAL OR ECONOMIC LOSS. Lessor is not responsible for any repairs to or the performance of the Equipment or for any maintenance or service to the Equipment. If a warranty exists from the manufacturer of the Leased Equipment, Lessor shares its rights to said warranty with Lessee for the duration of the agreement.

**Loss and Damage:**

Lessee is solely responsible for all loss, destruction or damage to the Equipment and Lessee agrees to assume the risk of all such loss, destruction or damage to the Equipment. No such loss, destruction or damage to or loss of use of the Equipment shall relieve Lessee from any obligation under this Lease including, but not limited to, Lessee's continuing duty to make Lease payments. In the event of loss

ONTIVEROS Cmplt Ex. B 005

Doc ID: 840676a78780714b4bb0fd3e69308d6cd16389ef

or damage to the equipment, Lessee shall, at the Lessor's discretion; (i) replace or repair the Equipment to the Lessor's acceptable satisfaction or (ii) pay the replacement cost of the Equipment to the Lessor.

**Insurance:**

If the vehicle/Lessee is involved in any "total loss" accident during the lease term, all amounts still due to Lessor shall be satisfied first. If there is any excess money after what is due to Lessor, the same shall be paid out to Lessee and the contract shall be terminated due to impossibility to complete any future performance of stated terms. If the vehicle/Lessee is involved in any accident which is less than a total loss, then Lessee shall pay any deductible due to the insurance company from Lessor, and Lessor shall fix the unit with any insurance monies paid. Lessor shall fix the unit so as to be in as good as condition as the unit was in prior to the loss, but shall not be obligated to fix the unit so as to add any additional value in the unit then what was previously the value.

**Indemnity of Lessor against third-party claims**:

Lessor is not and shall not be responsible for any losses or injuries caused by the manufacture, acquisition, delivery, ownership, use, lease, possession, maintenance or operation of the Equipment or defects in the Equipment. Lessee agrees to indemnify and hold harmless the Lessor and any affiliated companies, including their owners, successors, heirs and assigns, directors, officers, agents, attorneys, employees, representatives, and insurers, jointly and severally, from and against any and all losses, costs, damages, claims or expense, including, without limitation, attorneys' fees, incurred by the Lessee and other indemnitees, or any of them, arising out of the manufacture, acquisition, delivery, ownership, use, lease, possession, maintenance or operation of the Equipment or defects in the Equipment. Lessee further agrees to indemnify Lessor and other indemnitees, or any of them, for any attorneys' fees expended in enforcement of this paragraph.

**Taxes and Fees:**

Lessee agrees to pay or ensure that the motor carrier under whose authority Lessee is leased pays all license and registration fees, sales and use taxes, personal property taxes and all other taxes and charges related to the ownership, leasing, rental, purchase, possession or use of the Equipment (except those based on Lessor's net income) in addition to the Monthly Payment as billed by Lessor to Lessee. Lessee agrees that if Lessor pays any taxes or charges on Lessee's behalf, Lessee will reimburse Lessor for all such payments and will pay Lessor 18% interest or at the maximum rate legally allowable and a late charge on such payments with the next Monthly Payment, plus such reasonable costs incurred in collecting and administering any taxes, assessments or fees and remitting them to the appropriate authorities.

**Purchase Option & Surrender:**

Effective at the end of the Lease Term, provided that the Lessee is not in Default under this Agreement, Lessee shall have the option to purchase the Equipment for $1.00. Lessee shall provide written notice of its election to purchase the Equipment no later than the last day of the Lease Term. In the event Lessee does not elect to purchase the Equipment on or before the last day of the Lease Term or in the event the Lessee is in Default of the agreement, Lessee shall return the Equipment to Lessor at the location designated by Lessor, freight prepaid, in as good condition as when the Equipment was received by Lessee, less ordinary wear and tear. The vehicle will be returned to the same location where it was picked up at or at the location designated by the Lessor.

ONTIVEROS Cmplt Ex. B 006

Doc ID: 840676a78780714b4bb0fd3e69308d6cd16389ef

In any event, whenever the Equipment is returned to Lessor under this Agreement for any reason, the Equipment shall be in a condition compliant with all Department of Transportation guidelines and requirements and in a condition under which it may be safely and legally operated on the public highways. Lessee shall return the Equipment at the location specified by the Lessor, and agrees to be solely responsible for paying the parts and labor costs for any and all repairs or replacement of parts necessary to restore the Equipment to the condition in which the Equipment was provided to Lessee.

At the time of early termination, all payments made towards the purchase shall be converted to "rental payments" and shall be retained, in full, by Lessor.  If Lessor must arrange to repossess the equipment, the cost of repossession shall be paid by the Lessee.

**Default & Termination:**

Lessee shall be in default of this Lease in the event any of the following occurs; (a) Lessee fail to make any Monthly payment or other payment when due; (b) Lessee breaches any obligation under this Lease, or any other agreement with Lessor; (c) Lessee or any guarantor dies; (d) Lessee becomes insolvent or unable to pay Lessee's debts when due; (e) Lessee stops doing business as a going concern; (f) Lessee transfers all or substantially all of Lessee's assets; (g) Lessee makes an assignment for the benefit of creditors; (h) Lessee or a guarantor voluntarily files for bankruptcy or has bankruptcy involuntarily filed against Lessee; (i) a trustee, receiver, or liquidator is appointed for Lessee or a guarantor; or (j) Lessee violates any Federal, State or local law or regulation governing the operation of the Equipment including, but not limited to, Department of Transportation Hours of Service Regulations, and Vehicle Inspection and Maintenance Regulations. If the Lessee is terminated for any reason by the Lessor or an affiliate company, the Lessor reserves the right to terminate this agreement and all payments made towards the vehicle will be converted into rental payments. Lessor reserves the right to terminate this Agreement if Lessee violates any provision or if Lessor has reasonable belief that Lessee is hauling loads for other carriers.

**Remedies:**

If Lessee fails to make any payment or violates any provision of this agreement, the Lessor may, but is not required to give written notice to the breaching party. The Leese shall have (10) days from the receipt of notice to cure the default (Cure Period).  In the event that the default is not cured, the Lessor shall then have the right to exercise any one or more of the following remedies: (1) Lessor may declare the entire balance of the unpaid Monthly Payments for the full term and all other amounts then due immediately due and payable; (2) Lessor may sue for and receive all Monthly Payments and other payments then accrued or accelerated under this Lease, including but not limited to late fees, expenses and other charges. All accelerated Monthly Payments shall accrue interest at a rate of eighteen percent (18%) per year; (3) Lessor may terminate the Lease; (4) Lessor may require Lessee to return the Equipment to Lessor and, in the event, Lessee fails to return the Equipment, Lessor may enter upon Lessee's premises peaceably with or without legal process where the Equipment is located and repossess the Equipment. Such return or repossession of the Equipment will not constitute a termination of this Lease unless Lessor expressly notifies Lessee of such in writing. Lessee shall continue to be liable for the contractual lease payments due under this agreement.  In the event the Equipment is returned to Lessor or repossessed by Lessor and, unless Lessor has terminated this Lease, Lessor may sell or re-lease the Equipment to any persons upon any terms Lessor may choose in its sole discretion, with or without notice to Lessee. Should Lessor elect to repossess the Leased Equipment, Lessee shall be liable to Lessor for all costs and expenses associated with such repossession; or (5) Lessor may set-off the funds due to Lessor under this Lease against any amounts owed by Lessor to Lessee or held by Lessor for the benefit of Lessee including,

ONTIVEROS Cmplt Ex. B 007

Doc ID: 840676a78780714b4bb0fd3e69308d6cd16389ef

but not limited to, amounts held by Lessor in escrow and amounts held by Lessor as security deposit under this Lease. If the vehicle is repossessed by the Lessor for any reason, the Lessor may, but is not obligated to hold in storage for 10 days any personal items belonging to the Lessee.

**Acceleration:**

A. **Acceleration of Lease Payments**. Should Lessee be in default, fail to cure the default prior to expiration of the Cure Period, and Lessor take possession of the Leased Equipment prior to expiration of the Lease Term (or has made a written demand upon Lessee for return of the Leased Equipment for which Lessee failed to comply with), all payments due to Lessor during the life of this equipment lease agreement shall be accelerated, thus becoming immediately due and payable by Lessee to Lessor as of the date of expiration of the Cure Period. This shall be known as the "Acceleration Clause."

B. **Present Value Discount of Accelerated Lease Payments**. Should the Acceleration Clause apply, the amount payable by Lessee under the Acceleration Clause shall be discounted from the future due date of the lease payment (as originally required under the Lease Agreement) to the present value at the date of collection by Lessor using a discount rate of 8%.

C. **Re-Lease or Sale of Leased Equipment after Repossession**. Should Lessor find a new lessee or buyer of the Leased Equipment prior the expiration of the Lease Term, any payments received from the new lessee or buyer during the Lease Term shall be first netted against Lessor's expenses incurred effecting the rental or sale of the Lease Equipment, and then offset against amounts owed by Lessee to Lessor under this equipment Lease Agreement. Should the amount collected by Lessor from any new lessee or buyer of the Leased Equipment (after net of releasing or sales expenses) exceed the amount then owed by Lessee to Lessor, the excess (if any shall be refunded to Lessee. Any amounts received by Lessor through re-lease or sale of the Leased Equipment **after** expiration of the Lease Term shall not be offset against amounts owed by Lessee to Lessor under this lease agreement and shall not otherwise be refunded to Lessee.

**Attorney Fees and Expenses:**

Lessee agrees to pay all expenses incurred by Lessor in connection with the enforcement of any remedies under this Lease, including but not limited to, expenses of repossessing, storing, shipping, repairing and selling the Equipment and attorneys' fees.

**Joint and Several Liabilities:**

If there is more than one Lessee, (or if the Lessee is a Corporation) all lessees hereby agree to be jointly and severally liable for any breach of the terms of this agreement. The Lessee understands that they are obligated both personally and through their company for the faithful performance of all covenants of this agreement.

**Bankruptcy:**

Neither this Lease, nor any interest therein, is assignable or transferable by operation of law. If any proceeding under the Bankruptcy Act, as amended, is commenced by or against the Lessee, or if the Lessee is adjudged insolvent, or if Lessee makes any assignment for the benefit of his creditors, or if a writ of attachment or execution is levied on the Equipment and is not released or satisfied within ten ( 10 ) days thereafter, or if a receiver is appointed in any proceeding or action to which the Lessee is a party with authority to take possession or control of the Equipment, Lessor may exercise any one or more of the remedies mentioned previously. If Lessor elects to terminate the agreement, this Lease shall not be treated as an asset of Lessee.

Doc ID: 840676a78780714b4bb0fd3e69308d6cd16389ef

**Ownership:**

During the Lease Term, the Lessor owns and retains title to the Equipment and Lessee has the right to use the Equipment for the full Lease term provided Lessee complies with all of the terms and conditions of this Lease. Lessee agrees not to permit a lien of any kind to be placed on the Equipment. In the event Lessee permits a lien to be placed on the Equipment, such will constitute a breach of the Lease and Lessee agrees that Lessor may, but is not required to, satisfy the lien in Lessor's own discretion and Lessee shall be responsible for compensating the Lessor for any payments so made.

**Assignment:**

Lessee agrees that Lessee shall not transfer, sell, sublease, assign, pledge or encumber either the Equipment or any rights under this Lease without the prior written consent of the Lessor. Lessee is to retain possession of the Leased Equipment at all times during this agreement except upon demand of surrender by Lessor or repossession by Lessor. Lessor shall have the unilateral right to assign its interest in this lease to a third-party.

**Acknowledgement And Subordination Language:**

Lessee acknowledges and agrees that all of its rights under the Lease Agreement with Lessor in and to the Property, including Lessee's right to possession of the property, are subordinate, junior and subject to the rights and claims of any assignee of Lessor ("Assignee") against the Property under any financing documents or security agreement, whether now existing or hereafter created, including but not limited to the right of Assignee to take possession of the Property. Lessee consents and agrees to the assignment of (i) all monies due or to become due to Lessor under the Lease Agreement and (ii) all right and privileges of Lessor under the Lease Agreement. Lessee promises and agrees to settle all claims against Lessor directly with Lessor and hereby waives, relinquishes and disclaims as to Assignee all counterclaims, rights of set-off, and defenses Lessee may have against Lessor, including any right to withhold payments of or refrain from paying, any monies that are due to become due under the terms of the Lease Agreement; except that Lessee shall not be liable to Assignee for monies paid to Lessor prior to the time Assignee notifies lessee to pay Assignee directly.

**Hazmat And Telematics Language:**

Lessee further agrees that throughout the term of this Agreement (a) it will not permit the Property to be used for the transportation of passengers or for the digging, hauling, loading, storing or transporting of material designated as hazardous, radioactive, toxic, flammable, explosive or environmentally hazardous, unsafe or dangerous under any federal, state or local law or rule; and (b) it will not interfere with the operation of any telematics system in any Property; and that Assignee may monitor or access the Property's utilization, location and other information or reports contained in or generated by any such telematics system to ensure compliance with any Agreement related to the Property; or for any other lawful purpose; and may use any telematics system or information generated by the telematics system to locate the Property.

**Additional Documents:**

If Lessor shall so request, Lessee shall execute and deliver to Lessor such documents as Lessor shall deem necessary or desirable for purposes of recording or filing to protect the interest of Lessor in the Equipment including, but not limited to UCC financing statement.

Doc ID: 840676a78780714b4bb0fd3e69308d6cd16389ef

**Notices:**

All notices, demands and communications required or desired to be given in connection with this Lease shall be in writing and shall be deemed to have been duly given on the date received if delivered personally, by courier service, or by electronic means or, if mailed, on the third day after mailing upon the party shown below.

**Integration:**

This Agreement sets forth the entire agreement between the Parties with regard to the subject matter hereof. All prior agreements, and covenants, express or implied, oral or written, with respect to the subject matter hereof, are hereby superseded by this agreement. This is an integrated agreement.

**Severability:**

In the event any provision of this Agreement is deemed to be void, invalid, or unenforceable, that provision shall be severed from the remainder of this agreement so as not to cause the invalidity or unenforceability of the remainder of this Agreement. All remaining provision of this Agreement shall then continue in full force and effect. If any provision shall be deemed invalid due to its scope or breadth, such provision shall be deemed valid to the extent of the scope and breadth permitted by law.

**Modification:**

Except as otherwise provided in this document, this Agreement may be modified, superseded, or voided *only* upon the written and signed Agreement of the Parties. Further, the physical destruction or loss of this document shall not be constructed as modification or termination of the agreement contained herein.

**Non-Disparagement**

The Lessee acknowledges and agrees that the Lessee will not defame or criticize the services, business, integrity, veracity, or personal or professional reputation of the Lessor or any of its directors, officers, employees, affiliates, or agents of any of the foregoing in either a professional or personal manner either during the term of this agreement or thereafter.

**Acknowledgments:**

Each party acknowledges that he or she had an adequate opportunity to read and study this Agreement, to consider it, and to consult with an attorney if he/she does so desire. Each party understands and acknowledges that this is a legally binding agreement and that they are entering into the same with full knowledge of all of the terms, conditions and covenants contained herein.

**Exclusive Jurisdiction for Suit:**

The parties entering into this agreement submit to personal jurisdiction in Du Page or Cook County, Illinois for adjudication or any disputes and/or claims between the parties under this agreement. Furthermore, the parties hereby agree that the courts of Du Page County or Cook County, Illinois (at Lessor's choice) shall have exclusive jurisdiction over any disputes between parties relative to this agreement, whether said dispute sounds in contract, tort, or other areas in the law.

Doc ID: 840676a78780714b4bb0fd3e69308d6cd16389ef

**State Law:**

This Agreement shall be constructed under the laws of the State of Illinois.

**IN WITHESS WHEROF**, and acknowledging acceptance and agreement to the foregoing. **LESSOR** and **LESSEE** affix their signature hereto as of the date written on page 1 hereof:

**LESSOR**                                                        **LESSEE**

…………………………..                            ……………………………

Authorized representative                              **Owner/Operator**

**FLOYD INC**                                                   **Address:** 3810 49th Ave

                                                                       **City/State:** Moline Illinois

                                                                       **Phone#:** 3092060939

                                                                       **SS# or FEIN#:** ▮▮▮▮▮▮▮▮

In the State of Illinois:
County of Du Page:

The above parties, personally present before me, did set their hands and seals to the foregoing document this _____ day of _____ 20____ at Bensenville, Illinois.

_____          (SEAL)
Notary Public, State of Illinois
My Commission Expires: ____/____/_____

09 / 01 / 2023
Doc ID: 840676a78780714b4bb0fd3e69308d6cd16389ef

## Summary of Charges:

- $50 charge per month for TripPak envelopes.
  - If more than one envelope is sent per week, there is an additional charge of $10 per envelope.
- $150 charge per month for ELD use.
- You are responsible for all maintenance fees on both your truck and trailer.
- A quarterly IFTA charge based on upon the mileage driven and fuel used during each quarter.

## Regular payments depending on your equipment leased:

**Cargo Insurance**
- $250 charge per week.

**Truck Lease**
- Your weekly truck payment is stated in your Equipment Lease Agreement, refer to your agreement for your applicable weekly payment based upon the truck you leased.

**Bobtail Insurance**

| Year of Truck | Charge Per Month |
|---|---|
| 2014-2016 | $400 |
| 2017 | $420 |
| 2018 | $450 |
| 2019-2022 | $465 |
| 2023-2024 | $500 |

**Trailer Lease**

| Type of Trailer | Weekly Charge |
|---|---|
| Dry Van | $225 |
| Flatbed | $180 |
| 2010 Reefer | $200 |
| 2011-2014 Reefer | $285 |
| 2015-2017 Reefer | $350 |
| 2017-2020 Reefer | $400 |
| 2022 Reefer | $475 |

## One-time Charges:
- $30 charge for NY, KY and NM Permits.
- $99.99 charge for ELD enrollment.

## Other:
- A total escrow (security deposit for new drivers) charge of $2,000, which shall be pro-rated weekly at a weekly rate of $500, however, company reserves the right to charge a lesser amount in any given week and apply the balance forward.
- An annual registration charge of $2,500, which shall be pro-rated at a weekly rate of $500, however, company reserves the right to charge a lesser amount in any given week and apply the balance forward.
- A cash advance of $50 is available weekly from your company fuel card.
- A fuel advance is available on your company fuel card which will be charged every pay period according to the amount of fuel used.
  - Use of the company fuel card is not mandatory, and any rebates and discounts earned shall be retained by company.

By signing below, I hereby acknowledge that I have read and completely and fully understand and accept the terms and conditions of the above charges and fees.

Jayme Richard Ontiveros

_____
Name

_____
Signature

09 / 01 / 2023
_____
Date

ONTIVEROS Cmplt Ex. B 012

Doc ID: 840676a78780714b4bb0fd3e69308d6cd16389ef

# <u>DIRECT DEPOSIT INFO</u>

| FIRST NAME | Jayme |
|---|---|
| LAST NAME | Ontiveros |

please check **one** of the suggested checkboxes

✓ **SSN**    If you want your payments deposit to your personal name account please check SSN.

**FEIN(EIN)**    If you want your payments deposit to your business account please check FEIN.

| | |
|---|---|
| SSN | ██████████ |
| COMPANY NAME (your own full company name ) | NA |
| FEIN (EIN) | NA |
| ADDRESS (Your billing or mailing address) | 101 1/2 18th Street, Apt 4 |
| CITY | Rock Island |
| STATE & ZIP | Illinois |
| HIRE DATE | 9-1-2023 |
| BANK NAME/CHECKING OR SAVING | ████████████████ |
| ROUTING NUMBER | |
| ACCOUNT NUMBER | |
| E-MAIL ADDRESS | ontiverosjayme@gmail.com |
| DATE OF BIRTH | ██████████ |

**By signing below I acknowledge that I have fully read and understood company policy.**

Doc ID: 840676a78780714b4bb0fd3e69308d6cd16389ef

 **Dropbox** Sign

Audit trail

| | |
|---|---|
| Title | Lease to purchase for the truck-Jayme Richard Ontiveros |
| File name | Lease to purchase truck +charges.pdf |
| Document ID | 840676a78780714b4bb0fd3e69308d6cd16389ef |
| Audit trail date format | MM / DD / YYYY |
| Status | ● Signed |

## Document History

| | | |
|---|---|---|
| SENT | **09 / 01 / 2023**<br>23:18:19 UTC | Sent for signature to Jayme Richard Ontiveros (ONTIVEROSJAYME@GMAIL.COM) from bos@floydlogistics.com<br>IP: 91.150.68.254 |
| VIEWED | **09 / 01 / 2023**<br>23:20:15 UTC | Viewed by Jayme Richard Ontiveros (ontiverosjayme@gmail.com)<br>IP: 174.192.136.113 |
| SIGNED | **09 / 01 / 2023**<br>23:32:18 UTC | Signed by Jayme Richard Ontiveros (ontiverosjayme@gmail.com)<br>IP: 174.192.136.113 |
| COMPLETED | **09 / 01 / 2023**<br>23:32:18 UTC | The document has been completed. |

Powered by **Dropbox** Sign

ONTIVEROS Cmplt Ex. B 014